FILED IN CHAMBERS
U.S.D.C.  Atlanta

JUN 29 2011

JAMES N. HATTEN, Clerk

Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ISRAEL CRUZ, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:05-CR-0324-CAP-JFK-6 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:10-CV-3698-CAP-RGV |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72.

Let the same be filed and a copy, with a copy of this order, be served upon counsel for

the parties.

Each party may file written objections, if any, to the report and recommendation

within fourteen (14) days after being served with a copy of it.  28 U.S.C. § 636(b)(1).

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to the transcript if applicable) and shall be

served upon the opposing party.  The party filing objections will be responsible for

obtaining and filing the transcript of any evidentiary hearing for review by the district

court.  If no objections are filed, the report and recommendation may be adopted as

the opinion and order of the district court and any appeal of factual findings will be limited to a review for plain error or manifest injustice.  <u>United States v. Slay</u>, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED** this 29th day of June, 2011.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ISRAEL CRUZ, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:05-CR-0324-CAP-JFK-6 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:10-CV-3698-CAP-RGV |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of movant Israel Cruz's pro se motions to extend the time for filing a 28 U.S.C. § 2255 motion, [Doc. 1269], to vacate, set aside, or correct his sentence pursuant to § 2255, [Doc. 1275], for immediate release, [Doc. 1306], and to stay these proceedings, [Doc. 1310]. Because Cruz has timely filed his § 2255 motion, his motion for an extension of time, [Doc. 1269], is **DENIED** as moot, and since Cruz moved to stay these proceedings pending a ruling by the United States Supreme Court that has now been issued, his motion to stay, [Doc. 1310], also is **DENIED** as moot. For the following reasons, the undersigned **RECOMMENDS** that Cruz's § 2255 motion, [Doc. 1275], and his motion for immediate release, [Doc. 1306], be **DENIED**.

# I. PROCEDURAL HISTORY

A federal grand jury returned a thirty-one count superceding indictment against Cruz (also known as Najeiza Cruz and Mananitas) and eighteen other co-defendants on charges relating to their association and activities with the street gang known as "Sureños-13" or "SUR-13." [Doc. 498]. Cruz was charged in two counts. [Id.]. Count Fifteen charged Cruz with murdering Florentino Marcial in furtherance of the racketeering activity, in violation of 18 U.S.C. § 1959(a)(1), and Count Sixteen charged him with using and carrying a firearm, and causing death therewith, during and in relation to Marcial's murder, in violation of 18 U.S.C. § 924(c) and (j)(1). [Id. at 24-25]. Cruz pleaded not guilty and proceeded to trial represented by court-appointed counsel Michael H. Saul. [Docs. 107, 561, 855]. The jury returned a verdict of guilty on both counts. [Doc. 903]. The Court imposed a total sentence of life plus 120 months of imprisonment. [Doc. 1058].

Cruz, represented by Mr. Saul, timely appealed his convictions and sentences. [Doc. 1100]. On June 29, 2009, the United States Court of Appeals for the Eleventh Circuit affirmed, concluding, among other things, that because Cruz did not meet his burden of proving that he was entitled to a jury instruction on justifiable homicide for the Marcial murder, the Court did not abuse its discretion by declining to give his proposed charge. United States v. Flores, 572 F.3d 1254, 1266 (11th Cir. 2009). The

Eleventh Circuit summarized the evidence adduced at trial regarding the Marcial

murder as follows:

> Sur-13 is a gang with chapters in several U.S. cities, including Atlanta.
> The gang is hierarchical, with a three-tiered structure that groups
> members based on age and status. When Sur-13 initiates a new member,
> the individual is "jumped in" through a beating by three other gang
> members. A member can then improve his status within Sur-13 by
> "putting in work" for the gang through, among other things, participating
> in drive-by shootings, robberies, burglaries, and violent confrontations
> with members of rival gangs.
>
> . . .
>
> On the night of December 12, 2003, some Sur-13 members, including
> Cruz, attended a party in a clubhouse open to the public. The party's
> organizers hired two security guards to monitor the venue's door.
> Sometime after midnight, members of the rival gang "Vatos Locos"
> arrived at the party. Inside the clubhouse, members of the two gangs
> argued and a fight broke out, which included members of the gangs
> throwing beer bottles at each other. The security guards "shut the whole
> party down" and "ushered everybody out" the clubhouse's front door.
> Once outside, Cruz and others stood on the steps of the building, arguing
> with party-goers on the ground below and threatening to shoot them.
> Cruz pulled a pistol out of his jacket pocket and fired it towards the
> crowd. He fatally shot Florentine Marcial, who was not a gang member,
> in the back.

Id. at 1259-60. In rejecting Cruz's argument that he was entitled to a justification

charge, the Eleventh Circuit further explained that,

> Cruz was not under an imminent threat of death or serious bodily injury
> at the time he fired his weapon. The security guard testified that a fight
> broke out inside the party and that bottles were thrown, but that he and
> his partner then closed the party and "ushered everybody out" of the

3

clubhouse. A witness testified that once outside, Cruz stood with a group at the top of the steps, taunting those below and threatening to shoot them. There is no evidence that Cruz was being attacked at the time he fired his gun or that anyone else at the party had a weapon. A forensic pathologist from the Fulton County Medical Examiner's Office testified that the bullet entered Marcial's torso at a slightly upward trajectory, consistent with the theory that Marcial was crouching or running away at the time he was shot.

Id. at 1266. On November 9, 2009, the United States Supreme Court denied Cruz's petition for certiorari. Cruz v. United States, 130 S. Ct. 561 (2009).

On November 9, 2010, Cruz, proceeding pro se, timely filed the instant motion to vacate his sentence, raising the following sixteen grounds for relief:

1. Counsel was ineffective for failing to raise on appeal that the jury was shown a video-taped deposition where Cruz wore prison clothes and restraints;

2. Counsel was ineffective for failing to seek a cautionary jury instruction regarding the prison garb and restraints;

3. Counsel rendered ineffective assistance by conceding Cruz's guilt during closing argument;

4. The prosecutor denied him a fair trial by informing the jury during opening statement that some of Cruz's co-defendants had pled guilty;

5. Counsel rendered ineffective assistance on appeal by failing to challenge the prosecutor's improper opening statement;

6. Cruz was denied due process when the prosecutor vouched for its witnesses during opening statements and submitted their plea agreements to the jury;

4

7.      Counsel was ineffective for failing to raise ground six on appeal;

8.      The prosecutor committed prosecutorial misconduct by allowing government witnesses Isaac Alamia and Yonic Abraham to provide false testimony;

9.      Counsel was ineffective for failing to raise ground eight on appeal;

10.     Counsel rendered ineffective assistance by failing to request a curative instruction regarding Alamia's and Abraham's false testimonies;

11.     Counsel rendered ineffective assistance on appeal by failing to challenge the Court's jury instruction that included felony and malice murder, which is prohibited pursuant to O.C.G.A. § 16-1-7;

12.     Counsel was ineffective on appeal for failing to argue that Cruz's rights under the Speedy Trial Act were violated and dismissal of the charges was warranted;

13.     Counsel was ineffective for failing to object to the racial composition of the jury venire, which did not include a representative number of Hispanics;

14.     Cruz was denied a fair trial due to the trial judge's remarks concerning his medications and illness, which impaired his ability to proceed with the trial;

15.     Counsel rendered ineffective assistance on appeal by failing to raise the trial judge's misconduct; and

16.     Counsel's errors were cumulatively unconstitutional.

AO 72A
(Rev.8/82)

[Doc. 1275 at 4, Mem.].[1]  The government responds that all of Cruz's grounds for relief lack merit.  [Doc. 1304].  Cruz has filed a reply, [Doc. 1324], and moves the Court to order his immediate release due to the government's failure to timely file its response, [Doc. 1306], and to stay these proceedings because the Supreme Court has granted certiorari in a case raising a similar Speedy Trial Act claim, [Doc. 1310].

## II. DISCUSSION

### A.    Motion for Immediate Release

Cruz argues that he is entitled to immediate release because the government failed to timely respond, which "constitute[s] a concession to [his] claim[s]."  [Doc. 1306 at 2].  Cruz's request is construed as a motion for default judgment, and it is due to be denied because "a default judgment is not contemplated in habeas corpus cases." Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987).

### B.    Legal Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

---

[1]Document number 1281, which has been docketed as a supplemental brief, is identical to document number 1275.

6

collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). See also Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (Strickland applies to allegations of ineffective assistance of appellate counsel). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a

7

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . ."). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Smith v. Murray, 477 U.S. 527, 536 (1986) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy."); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.")

In order to meet the second prong of Strickland, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Eagle, 279

8

F.3d at 943 ("To determine whether the [unreasonable] failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim.").

## C.   Grounds One and Two: Video of Cruz in Prison Garb and Restraints

In grounds one and two, Cruz claims that the jury was shown a videotape of Enrique Chaves Ramirez's February 23, 2006, deposition that included images of Cruz in prison garb and restraints. [Doc. 1275 at 4, Mem. at 1-3]. The government responds that the edited video shown to the jury included only a close-up of Cruz's face and did not show either prison garb or restraints. [Doc. 1304 at 8]. Cruz replies that "the government has presented a false claim and altered tape in which a video expert should view." [Doc. 1324 at 4].

The videotape of Ramirez's February 23, 2006, deposition that was shown to the jury includes a close-up of Cruz's face for approximately twenty seconds.[2] It does not show Cruz's prison garb or restraints. Cruz has presented no evidence that his prison garb or restraints were visible on the video shown to the jury or that the video shown to the jury was different than the one submitted by the government in response to his motion to vacate. Accordingly, Cruz cannot show deficient performance by

---

[2]The government provided the Court a courtesy copy of the DVD of Ramirez's deposition that will be filed as an exhibit to this Report and Recommendation. [Doc. 1334]. There are four clips on the DVD, and the relevant excerpt showing Cruz begins at 26 minutes and 55 seconds on the first clip of the DVD, labeled 8-20 edit #2.

counsel for failing to seek a cautionary jury instruction or raise this issue on appeal since the claimed error is belied by the record. See Smith, 477 U.S. at 536; Strickland, 466 U.S. at 690.

**D.    Ground Three: Counsel's Alleged Concession of Cruz's Guilt**

In ground three, Cruz argues that counsel conceded his guilt during closing argument. [Doc. 1275, Mem. at 4-8; Doc. 1278]. Specifically, Cruz complains of the following remarks by Mr. Saul during closing argument,

> I'm telling you. If I'm being attacked or anybody, and I take out my weapon and fire it at my attacker, and that attacker jumps out of my way or if I'm just a bad shot and I miss and I hit somebody else, that is not malice murder. It might be something. It might be an accident. It might be reckless. It might be something.

[Id., Mem. at 5]. The government responds that these remarks are not a concession of Cruz's guilt, but a proper closing argument that the prosecution had failed to meet its burden to establish malice aforethought. [Doc. 1304 at 9]. Cruz replies that Mr. Saul's comments enabled the prosecution to state in closing that Cruz had admitted to being the shooter, "but this was not a case of self-defense." [Doc. 1324 at 6].

"The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating, and applying the evidence. . . . The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984) (citing

10

United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978)).  Here, Mr. Saul argued that, even if all the government's evidence was true, it did not prove all elements of the charged crime.  Courts "must avoid second-guessing counsel's performance," Chandler, 218 F.3d at 1314, and "the fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Id.  Counsel did not concede Cruz's guilt, and thus, his performance was not deficient. Strickland, 466 U.S. at 690.

E.    **Grounds Four through Seven: Co-Defendants' Guilty Pleas**

Cruz next challenges, in grounds four through seven, the prosecution mentioning his co-defendants' guilty pleas during opening statement and introducing those pleas into evidence during the witnesses' direct testimony. [Doc. 1275, Mem. at 8-17].  The government responds that there was no error in disclosing the co-conspirators' guilty pleas. [Doc. 1304 at 9-10].  The undersigned agrees. "To blunt the impact of 'expected attacks on the witnesses' credibility,' the Government may disclose guilty pleas of Government witnesses." United States v. DeLoach, 34 F.3d 1001, 1004 (11th Cir. 1994) (citations omitted).  Accordingly, Mr. Saul reasonably chose not to object or to raise this meritless issue on appeal. See Smith, 477 U.S. at 536; Strickland, 466 U.S. at 690.

11

**F.   Grounds Eight through Ten: Alleged Perjured Testimony by Alamia and Abraham**

In ground eight, Cruz contends that prosecution witnesses Isaac Alamia and Yonic Abraham testified falsely when Alamia responded that his only violent crime was a juvenile armed robbery and when Abraham asserted that the prosecutor had not promised him anything in exchange for his testimony. [Doc. 1275, Mem. at 17-21]. In grounds nine and ten, Cruz argues that Mr. Saul was ineffective for failing to request a curative instruction regarding this false testimony and failing to raise this issue on appeal. [Id. at 21-24]. The government does not specifically address Alamia's challenged testimony, but responds that Abraham did not lie.[3] [Doc. 1304 at 10-13]. Cruz replies, in pertinent part, that the government allowed Alamia's false statement to be presented to the jury when it refused to provide a document it had in its possession to refresh Alamia's recollection. [Doc. 1324 at 20]. According to Cruz, Alamia failed to disclose the fact that he was involved in a murder. [Id. at 23; Doc. 1275 at 22-23].

Because Cruz did not raise ground eight on direct appeal, he is procedurally barred from raising it in this § 2255 motion, absent a showing of cause and prejudice

---

[3]The government discusses Cruz's challenge to Alamia's testimony as a Brady v. Maryland, 373 U.S. 83 (1963), claim. [Doc. 1304 at 10-12]. However, Cruz does not argue that there was a Brady violation. [Doc. 1275, Mem. at 17-19].

12

or a fundamental miscarriage of justice. <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). "[A] prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that some objective factor external to the defense impeded counsel's efforts to comply with the procedural rule, or that his attorney's performance failed to meet the <u>Strickland</u> standard for effective assistance of counsel." <u>Reece v. United States</u>, 119 F.3d 1462, 1465 (11th Cir. 1997); <u>see also</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (holding that only a meritorious ineffective-assistance-of-counsel claim may constitute cause). However, Cruz's claims of ineffective-assistance-of counsel are not meritorious, as discussed hereinafter, and Cruz has not shown cause and prejudice or a fundamental miscarriage of justice to excuse the default of ground eight. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 324, 327 (1995) (In order to establish that a failure to review a defaulted claim will result in a fundamental miscarriage of justice, a movant must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" not presented at trial.)

Cruz has not presented any evidence to show that Alamia participated in a violent crime other than the juvenile armed robbery, and thus has not established that Alamia testified falsely. Moreover, Alamia was thoroughly cross-examined concerning his inducements to testify, prior criminal history, and involvement with

13

SUR-13. [Trial Tr. at 540-607]. Thus, even if Alamia's denial that he participated in any other violent crimes was false, Cruz cannot show that the outcome of his trial would have been different given counsel's thorough cross-examination and the evidence of Cruz's guilt outlined by the Eleventh Circuit on appeal. See Flores, 572 F.3d at 1259-60, 1266.

Regarding Cruz's claim that Abraham lied when he stated that the prosecutor had not promised him anything in exchange for his testimony, the government had previously informed Mr. Saul that it "would consider seeking a sentence reduction" for Abraham based on his truthful testimony. [Trial Tr. at 1198]. As the government correctly states in its response, "the mere consideration of a sentence reduction is not a promise to reduce a sentence." [Doc. 1304 at 12]. Thus, Abraham's testimony that the government had not promised him anything in exchange for his testimony was truthful. Accordingly, Cruz has not shown that Mr. Saul was ineffective for failing to argue that the government presented false testimony. See Strickland, 466 U.S. at 689-90, 694; Eagle, 279 F.3d at 938, 943. Thus, grounds nine and ten are without merit.

## G.    Ground Eleven: Jury Instruction on Felony and Malice Murder

In ground eleven, Cruz claims that Mr. Saul was ineffective for failing to challenge the Court's jury instructions that included both felony and malice murder

because O.C.G.A. § 16-1-7 prohibits convictions for both felony and malice murder for the death of a single victim. [Doc. 1275, Mem. at 24-25]. The government responds that the Court's instructions to the jury were correct. [Doc. 1304 at 13-15]. Cruz replies that the instructions were erroneous and confused the jury. [Doc. 1324 at 24].

The portion of the Court's instructions to the jury that Cruz challenges was an overview of the crimes charged against all of the defendants and was not specific to Cruz. [Trial Tr. at 2564-65]. The challenged instruction explained the elements of malice and felony murder generally because murder was a predicate offense to the conspiracy counts. The Court also specifically addressed the charges against Cruz, [id. at 2569-70], using language nearly identical to O.C.G.A. § 16-5-1(a) and (b), which define the offense of malice murder. Even if the challenged instruction applied to Cruz, O.C.G.A. § 16-1-7 prohibits multiple convictions, not multiple charges. See Newland v. Hall, 527 F.3d 1162, 1165 n.1 (11th Cir. 2008) (noting that while petitioner was charged with both malice and felony murder, he was only convicted of malice murder because § 16-1-7 did not permit convictions for both offenses for the death of a single victim). Cruz was convicted of malice murder, as charged in the indictment, not felony murder. [See Doc. 498 at 24; Doc. 903]. Accordingly, there

15

was no error in the Court's instructions to the jury and Mr. Saul reasonably chose not to raise this meritless issue on appeal. See Smith, 477 U.S. at 536.

## H.   Ground Twelve: Speedy Trial Act

In ground twelve, Cruz contends that Mr. Saul was ineffective for failing to argue on appeal that his rights under the Speedy Trial Act were violated. [Doc. 1275, Mem. at 26-29]. The government responds that there was no violation of the Speedy Trial Act because this case was declared complex and over 150 pretrial motions tolled the speedy trial clock. [Doc. 1304 at 15-21]. Cruz replies that he did not waive his right to a speedy trial and that he "was prejudicially detained 722 days due to the [prosecutors'] purposefully [sic] postponement of court proceedings by superseding the indictment" and by charging as many co-defendants as possible. [Doc. 1324 at 27-28].[4]

The Speedy Trial Act requires that a defendant be tried within seventy days from the later of the filing of the indictment or the defendant's first appearance before

---

[4] On March 15, 2011, Cruz submitted a motion to stay these proceedings because the United States Supreme Court had granted certiorari in United States v. Tinklenberg, 131 S. Ct. 62 (2010), to determine whether "the time between the filing of a pretrial motion and its disposition is automatically excluded from the deadline for commencing trial under the Speedy Trial Act." [Doc. 1310]. Cruz' motion is moot because the Supreme Court has issued an opinion in the case. See United States v. Tinklenberg, 131 S. Ct. 2007, 2010-11 (2011) (holding that the filing of a pretrial motion falls within the Speedy Trial Act's exclusion for such filings "irrespective of whether it actually causes, or is expected to cause, delay in starting a trial").

16

a judicial officer. 18 U.S.C. § 3161(c)(1). However, there are many exclusions from the seventy-day period, including "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). The Speedy Trial Act also excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." See 18 U.S.C. § 3161(h)(1)(D). "Delays resulting from co-defendants' motions are excludable time as to each co-defendant." United States v. Twitty, 107 F.3d 1482, 1488 (11th Cir. 1997).

In this case, the speedy trial clock would have started on August 16, 2005, the day after Cruz's initial appearance. See United States v. Campbell, 706 F.2d 1138, 1139 n.1 (11th Cir. 1983); United States v. Maloy, 835 F. Supp. 1373, 1375 (M.D. Fla. 1993); [Doc. 108]. However, on August 15, 2005, Magistrate Judge Linda T. Walker granted co-defendant Avila Maldonado until August 18, 2005, to obtain counsel and excluded the time under the Speedy Trial Act. [Doc. 110]. Magistrate Judge Walker subsequently extended the time for Maldonado to obtain counsel to August 23, 2005, [Doc. 113], and on that date, co-defendant Armando Prudente filed several pre-trial motions, including a motion to sever, [Docs. 82, 85, 87, 91, 93, 97], which remained pending until withdrawn on February 22, 2006. [Doc. 82, 329].

17

Accordingly, the speedy trial clock was tolled during the time the motion remained pending.  See United States v. Doe, 216 F. App'x 874, 877-78 (11th Cir. 2007) (tolling speedy trial clock while motion to sever was pending).

The speedy trial clock was further tolled by motions filed by Cruz's other co-defendants.  See Twitty, 107 F.3d at 1488.  While Prudente's motion to sever was pending, co-defendant Robert Sandoval filed a motion to suppress evidence, [Doc. 215], on January 24, 2006, that remained pending until August 28, 2006, when the Court adopted the Magistrate Judge's report and recommendation to deny the motion, [Docs. 474, 490].  During this time period, co-defendants Alejandro Salgado, Edgar Perez, Carlos Manuel Lorenzana, Nicasio Calderon Uribe, Angel Mazariegos, Carlos Martinez, and Arturo Sanchez, also filed pretrial motions that tolled the speedy trial clock.  [Docs. 250, 259, 285, 336, 341, 376, 419, 438, 469].

On February 3, 2006, Cruz filed several motions to suppress evidence, [Docs. 241, 244, 253, 255], that also tolled the speedy trial clock until August 28, 2006, when the Court adopted the Magistrate Judge's report and recommendation to deny the motions, [Docs. 474, 490].  Moreover, on February 3, 2006, Cruz also filed a motion in limine to suppress prejudicial evidence, [Doc. 242], that was not disposed of until a hearing on August 9, 2007, and the District Court specifically ruled that this motion "tolled the clock pursuant to § 3161(h)(1)(F) from February 3, 2006, until August 9,

18

2007, and [was] attributable to all co-defendants pursuant to § 3161(h)(7)." [Doc. 851 at 10].

On August 9, 2006, while the pretrial motions were pending, the Court issued a notice setting the trial for September 5, 2006. [Doc. 483]. On August 23, 2006, co-defendant Prudente filed a motion to continue the trial, [Doc. 489], which the Court granted on August 30, 2006, [Doc. 491]. The Court excluded under the Speedy Trial Act the time from the date of the Order through the date of the trial because the Court found that "the ends of justice served by allowing this continuance outweigh the best interests of the public and the defendants' interests in a speedy trial." [Doc. 491 at 2]. See 18 U.S.C. § 3161(h)(7)(A). The Court subsequently set the trial for March 5, 2007, [Doc. 492], but then granted additional requests by Cruz's co-defendants to continue the trial date, and excluded the time under the Speedy Trial Act. [Docs. 690, 702, 720, 731]. On February 23, 2007, after separating the defendants into two groups for trial, the Court scheduled the trial of the first group of defendants to begin on March 7, 2007, and the trial of the remaining defendants to commence on June 4, 2007. [Doc. 722].

The trial of three of Cruz's co-defendants began on March 12, 2007, [Doc. 742], but on March 14, 2007, the trial was continued after one of the defendants was involved in an automobile accident and was unable to continue with the trial. [Docs.

19

743, 751]. On May 1, 2007, the Court issued a notice scheduling the trial for Cruz and four of his co-defendants for June 4, 2007, [Doc. entry dated 5/01/2007], and on May 9, 2007, the Court scheduled the trial for the remaining co-defendants for August 13, 2007. [Doc. 772]. On May 30, 2007, the Court granted the government's motion to continue the June trial date for Cruz and his co-defendants to August 13, 2007. [Doc. 805].

Due to the time excluded by the numerous pretrial motions filed in this case and the multiple continuances of the trial date, the speedy trial clock was tolled for Cruz at least from the date of his arraignment on August 15, 2005, until August 18, 2005, while a co-defendant was granted time to retain counsel, and again from August 23, 2005, when a co-defendant first filed pretrial motions, until August 9, 2007, when the District Court held the hearing disposing of Cruz's motion in limine to suppress prejudicial evidence. [Doc. 845]. Thus, at most, only seven days elapsed on the speedy trial clock before Cruz's trial commenced on August 13, 2007.[5] Consequently, there was no Speedy Trial Act violation, and Mr. Saul reasonably chose not to raise this issue on appeal. See Smith, 477 U.S. at 536.

---

[5] In fact, at the hearing on August 9, 2007, the District Court deferred until trial other motions in limine filed by Cruz and his co-defendants, [Doc. 845], excluding even more days from the speedy trial clock than counted in calculating that seven days had elapsed.

20

## I.   Ground Thirteen: Racial Composition of the Jury Venire

In ground thirteen, Cruz argues that Mr. Saul was ineffective for failing to object to the racial composition of the jury venire, which he contends did not include a representative number of Hispanics. [Doc. 1275, Mem. at 29-32]. Specifically, Cruz states that because "Hispanics represented 1.7% of voters within the Atlanta area," his jury pool should have had "at least 17 to 26 Hispanics," but there were none. [Id. at 30-32]. In support of this ground, Cruz has submitted "statistical sheets" showing the percentage of eligible Hispanic voters. [Doc. 1280]. The government responds that this claim fails because the alleged disparity is less than ten percent and because Cruz has not presented any evidence to show that any under-representation was due to the systematic exclusion of Hispanics in the jury selection process. [Doc. 1304 at 21-24]. Cruz replies that he has presented evidence to support this claim. [Doc. 1324 at 30].

As the government correctly states, Cruz's allegations fail to establish that the representation of Hispanics in the "venire from which the jury was selected was not 'fair and reasonable in relation to the number of such persons in the community.'" United States v. Clarke, 562 F.3d 1158, 1163 (11th Cir. 1993). A defendant cannot establish a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement "where the absolute disparity between the percentage of the distinctive group among the population eligible for jury service and the percentage of the

21

distinctive group on the jury panel is ten percent or less." Id. The disparity between 1.7% and 0% is less than 10%. Thus, Mr. Saul reasonably chose not to raise this meritless issue. See Smith, 477 U.S. at 536; Strickland, 466 U.S. at 690.

## J.   Grounds Fourteen and Fifteen: Trial Judge's Alleged Impairment

In ground fourteen, Cruz argues that he was denied a fair trial due to the trial judge's remarks concerning the judge's medications and illness, which allegedly impaired his ability as a trial judge. [Doc. 1275, Mem. at 32-35]. Cruz further asserts that Mr. Saul was ineffective for failing to raise this issue on appeal. [Id. at 35-36]. The government responds that the Court was not unconstitutionally impaired. [Doc. 1304 at 25-26]. Cruz replies that the judge's medications caused him to make improper evidentiary rulings, which rendered his trial fundamentally unfair. [Doc. 1324 at 33-36].

The fact that the judge was on medication or was ill during part of the trial does not, on its own, establish a due process violation. See Buckelew v. United States, 575 F.2d 515, 518 (5th Cir. 1978) ("It is not error to be ill.") "[I]n order to amount to reversible error, a judge's remarks must demonstrate such pervasive bias and unfairness that they prejudice one of the parties in the case." United States v. Ramirez-Chilel, 289 F.3d 744, 750 n.6 (11th Cir. 2002). Factors that weigh in favor of a finding that a judge's remarks did not have a clear effect on the jury requiring

22

reversal include that the comments occupied but a few seconds of a lengthy trial and were directed to defense counsel rather than to the jury. United States v. Morales, 868 F.2d 1562, 1576 (11th Cir. 1989).

The comments cited by Cruz, [see Doc. 1275, Mem. at 32-33], do not indicate that the judge was impaired or unable to carry on with the trial. Moreover, Cruz has provided no support for his conclusory statement that the judge's condition prevented him "from allowing important Jencks and Brady material to be turned over to the defense," [see Doc. 1324 at 35]. Accordingly, Cruz has not shown that the judge's comments had a clear effect on the jury, and Mr. Saul's decision not to raise this meritless issue was reasonable. See Smith, 477 U.S. at 536; Strickland, 466 U.S. at 690.

## K.   Ground Sixteen: Cumulative Error

Finally, Cruz asks the Court to consider the cumulate effect of Mr. Sauls' errors in this case. [Doc. 1275, Mem. at 36; Doc. 1324 at 37]. The government responds that there was no cumulative error. [Doc. 1304 at 27].

"The cumulative error doctrine 'provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.'" United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (citation omitted).   In

23

addressing cumulative error, a court must first examine each claim individually and then examine any error in the aggregate and the trial as a whole to determine whether a defendant was afforded a fundamentally fair trial.  United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).  Having examined each individual claim and thoroughly reviewed the record, the undersigned finds that counsel's errors, if any, were few and that their aggregate effect did not deprive Cruz of a fair trial.  Therefore, ground sixteen fails.

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different

24

manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Cruz's claims for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV. CONCLUSION

For the foregoing reasons, Cruz's motion to extend the time for filing a 28 U.S.C. § 2255 motion, [Doc. 1269], and motion to stay these proceedings, [Doc. 1310], are **DENIED** as moot, and **IT IS RECOMMENDED** that his § 2255 motion to vacate sentence, [Doc. 1275], and motion for immediate release, [Doc. 1306], be **DENIED**.  **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to file as an exhibit the DVD of Enrique Chaves Ramirez's February 23, 2006, deposition, which is submitted with this Report and Recommendation.

The Clerk is further **DIRECTED** to terminate the referral to the assigned Magistrate Judge.

**IT IS SO ORDERED AND RECOMMENDED** this 29th day of June, 2011.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

25